1

2

3

4                        UNITED STATES DISTRICT COURT

5                              DISTRICT OF NEVADA

6
  SHAWNA LYNN MENDOZA,                    )
7                                         )
                   Plaintiff,             )
8                                         )
          vs.                             )
9                                         )        2:09-cv-01872-RCJ-RJJ
  MET LIFE AUTO AND HOME INSURANCE        )
10 AGENCY, INC., d.b.a. METROPOLITAN      )           **ORDER**
   PROPERTY AND CASUALTY INSURANCE        )
11 CO.,                                   )
                                          )
12                 Defendant.             )
  _____  )
13

14        This case arises out of Plaintiff Shawna Lynn Mendoza's automobile collision with a hit-

15 and-run driver.  Plaintiff's insurance company, Defendant Met Life Auto & Home Insurance

16 Agency, Inc. ("Met Life") has denied her claim under her uninsured motorist ("UM") policy.

17 Defendant has filed a motion for summary judgment or to amend the answer.  Plaintiff has

18 responded and moved to compel responses to interrogatories, requests for admission, and

19 requests for production, and for sanctions.  For the reasons given herein, the Court denies

20 Defendant's motion in part and grants it in part.  The motion for summary judgment is denied,

21 but Defendant may amend the Answer to implead Jacob Transportation Services, LLC.

22 I.        FACTS AND PROCEDURAL HISTORY

23        On or about December 18, 2007, Plaintiff was involved in a hit-and-run collision with an

24 unknown driver. (Compl. ¶ 6, Aug. 24, 2009, ECF No. 34-1).  At the time of the collision,

25 Plaintiff held an insurance policy with Defendant, policy number 497524763 ("the Policy"),

1    which included UM coverage. (*Id.* ¶ 7).  On October 28, 2008, Plaintiff demanded that

2    Defendant pay her the UM policy limit of $100,000. (*Id.* ¶ 9).  Plaintiff rejected Defendant's

3    counteroffer of $6700. (*See id.* ¶ 10; Opp'n Mot. Summ. J. 3:10–11, Aug. 23, 2010, ECF No.

4    29).

5           Plaintiff sued Defendant in state court.  The Amended Complaint ("AC") lists three

6    causes of action: (1) Breach of Contract; (2) Breach of the Covenant of Good Faith and Fair

7    Dealing; and (3) Unfair Claims Practices Under Nevada Revised Statutes ("NRS") Section

8    686A.310.  Defendant removed.  The Court denied Plaintiff's motion to remand, rejecting

9    Plaintiff's argument that under the "direct action" provision in 28 U.S.C. § 1332(c)(1) a

10   defendant insurance company should be considered a citizen of the same state as its own insured

11   who sues it. (*See* Order, Apr. 21, 2010, ECF No. 19 (ruling that the direct action provision of the

12   statute applies to cases where a plaintiff sues his adversary's insurance company directly, not his

13   own insurance company)).  Defendant has moved for summary judgment.

14   **II.    SUMMARY JUDGMENT STANDARDS**

15          The Federal Rules of Civil Procedure provide for summary adjudication when "there is

16   no genuine dispute as to any material fact and the movement is entitled to judgment as a matter

17   of law." Fed. R. Civ. P. 56(a) (2010).  Material facts are those which may affect the outcome of

18   the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

19   material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

20   the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and

21   dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

22   In determining summary judgment, a court uses a burden-shifting scheme:

23          When the party moving for summary judgment would bear the burden of proof at
            trial, it must come forward with evidence which would entitle it to a directed verdict
24          if the evidence went uncontroverted at trial.  In such a case, the moving party has the
            initial burden of establishing the absence of a genuine issue of fact on each issue
25          material to its case.

1  C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)

2  (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim

3  or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to

4  negate an essential element of the nonmoving party's case; or (2) by demonstrating that the

5  nonmoving party failed to make a showing sufficient to establish an element essential to that

6  party's case on which that party will bear the burden of proof at trial. See Celotex Corp., 477

7  U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be

8  denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H.

9  Kress & Co., 398 U.S. 144, 159–60 (1970).

10        If the moving party meets its initial burden, the burden then shifts to the opposing party

11  to establish a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio

12  Corp., 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

13  party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

14  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

15  versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

16  626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

17  by relying solely on conclusory allegations that are unsupported by factual data. See Taylor v.

18  List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions

19  and allegations of the pleadings and set forth specific facts by producing competent evidence that

20  shows a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324.

21        At the summary judgment stage, a court's function is not to weigh the evidence and

22  determine the truth, but to determine whether there is a genuine issue for trial. See Anderson, 477

23  U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

24  to be drawn in his favor." Id. at 255.  But if the evidence of the nonmoving party is merely

25  colorable or is not significantly probative, summary judgment may be granted. See id. at 249–50.

Page 3 of 11

III.    ANALYSIS

A.    Breach of Contract

The interpretation of an insurance contract is a question of law. *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003). Coverages are to be construed broadly to afford the insured the greatest possible coverage. *Cranmore v. Unumprovident Corp.*, 430 F. Supp. 2d 1143, 1149 (D. Nev. 2006) (citing *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1156–57 (Nev. 2004)). Policies are construed from the perspective of a layman rather than from "one trained in the law," and absent ambiguity, terms are to be given their plain and ordinary meanings. *McDaniel v. Sierra Health & Life Ins. Co.*, 53 P.3d 904, 906 (Nev. 2002). An ambiguity exists when a policy provision is subject to two or more reasonable interpretations. *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 604 (Nev. 1992). If the ambiguity cannot be resolved, the contract is to be construed against the insurer and in favor of the insured. *Estate of Delmue v. Allstate Ins. Co.*, 936 P.2d 326, 328 (Nev. 1997).

Defendant argues there is no question of material fact that it is not liable for any breach because the identity of the hit-and-run vehicle ("HARV") is known and the insurer of the HARV has not denied coverage but has only denied liability. Defendant also argues that a breach of contract claim has not accrued, because it has not formally denied coverage.

The Policy provides four alternative definitions of an "uninsured vehicle," which may be summarized as follows:

> (1) a vehicle for which no owner, operator, or other liable person has insurance at the time of the accident;
>
> (2) an insured vehicle for which the bodily injury coverage is less than the minimum required by state law;
>
> (3) an insured vehicle for which the insurer "denies coverage," is insolvent, or becomes insolvent; or
>
> (4) a HARV causing bodily injury to an occupant of the insureds vehicle if:
>
> > (a) the identity of the driver and owner of the HARV are unknown,

Page 4 of 11

                                (b) the accident is reported to the authorities within twenty-four hours,
                                (c) the injured person files a statement with the insurer within twenty days, and
                                (d) the injured person makes the damaged vehicle available to the insurer for inspection.

(*See* Policy 9–10, ECF No. 29-2).  There appears to be no dispute that neither of the first two provisions applies.  The parties dispute the application of the third and fourth provisions. Plaintiff argues that the HARV is "unknown" under the language of the Policy, and that even if it is known, the insurer has "denied coverage."  Defendant argues that the HARV is "known" and that the HARV's insurer has not "denied coverage" but has only denied liability, because the insurer denies that its insured was involved the accident at all.  This latter fact appears to be undisputed—that the suspected HARV's insurer denies its insured's involvement in the accident. This fact, however, tends to negate Defendant's argument that the HARV is "known," because there is in fact a dispute as to the identity of the HARV, regardless of Plaintiff's own belief that she "knows" the identity of the vehicle—a belief about which she now admits uncertainty.  The fact that Plaintiff at first seemed certain of the identity of the vehicle that hit her and has not submitted an affidavit that she is now uncertain does not necessarily mean the identity of the vehicle is "known" under the policy, as Defendant argues in its reply, for the simple reason that Plaintiff could have been wrong all along despite having initially reported in good faith.  The evidence, in fact, supports a conclusion that she was wrong, because the vehicle she saw near the scene that she thought hit her in fact had no damage where one would have expected to find it.

        Finally, Plaintiff argues that Defendant has waived any right to deny coverage under the UM provision, because it has acknowledged the claim as valid by paying Plaintiff $6700 under the provision; it simply disputes the extent of her damages. (*See* Letter, Nov. 6, 2008, ECF No. 29-4; Letter, Apr. 7, 2009, ECF No. 29-5 ("As requested, please find enclosed our check in the amount of $6,700 as the *undisputed value of the pending Uninsured Motorist claim* for your client noted above." (emphasis added))).  This indeed appears to constitute a waiver of denial

1   that the UM provision applies, because Defendant admitted that some amount was payable under

2   the UM provision, and the letter includes no reservation of rights as to a dispute over the

3   provision's applicability.  Even without such a waiver, however, the Court finds that the UM

4   provision applies here.

5        **1.    Identity of the HARV and Denial of Coverage**

6        **a.    "Unknown"**

7        Defendant notes that Plaintiff has claimed that the HARV had a license plate of "EXEC

8   25." Plaintiff's answer to Interrogatory No. 2 states in part, "[A] black limousine-style service

9   car . . . cut into Plaintiff's lane, hitting the driver's side fender of Plaintiff's car.  The adverse

10  driver continued on without stopping, so Plaintiff followed him and called the police to report

11  the accident." (*See* Pl.'s Answers to Def.'s First Set of Interrogs. 2:11–13, June 21, 2010, ECF

12  No. 24-2).  Plaintiff also identified the suspected HARV: "This was a black 2005 Lincoln Town

13  Car. The license plate was EXEC25." (*Id.* 13:11).  Plaintiff has admitted that the vehicle that

14  struck her was a black limousine with Nevada license plate EXEC25. (*See* Pl.'s Resps. to Def.'s

15  First Set of Reqs. for Admis. 1:26–2:8, June 8, 2010, ECF No. 24-3).  The police determined that

16  this vehicle was registered to Jacob Transportation Services, LLC, d.b.a. Executive Las Vegas

17  ("Executive"). (*See* Police Report 3, Dec. 19, 2007, ECF No. 24-4).  The driver of the suspected

18  HARV, however, denies involvement in any such accident, and his employer's insurance

19  company denied Plaintiff's claim against it for this very reason. (*See* Letter, Jan. 21, 2008, ECF

20  No. 24-5).

21       The question is whether the identity of the HARV is "unknown" under the Policy.  The

22  provision is ambiguous to some extent, because it does not define a standard of "knowledge."

23  One could reasonably interpret the provision to require a mere claim by the insured of the

24  identity of a suspected HARV to make it "known."  But one could also reasonably interpret the

25  provision to require a lack of factual dispute as to a suspected HARV's identity, or the subjective

1   satisfaction of the claims adjuster as to a HARV's identity, or some other standard. The

2   provision is therefore ambiguous. *See Grand Hotel Gift Shop*, 839 P.2d at 604. There will often

3   be times, as here, when an insured "knows" who hit her, i.e., claims to know, but where the

4   driver of the suspected HARV denies involvement, perhaps just as adamantly and in good faith:

5   "I know it wasn't me." In some such cases the insured will turn out to be right, and in other

6   cases the insured will turn out to be wrong. The relevant provision of the Policy does not clearly

7   indicate whether the identity of a HARV is "unknown" in such cases, because the questions

8   remain: unknown to whom, and to what standard of proof? The rule requiring interpretational

9   ambiguities to be resolved in favor of the insured therefore leads the Court to determine that

10  where there is a factual dispute as to the identify of the HARV, it is "unknown" under the Policy.

11  *See Delmue*, 936 P.2d at 328. Only if the driver of a suspected HARV admits involvement, the

12  insurer of a suspected HARV accepts the allegation of involvement, or under some other such

13  circumstances where there is no factual dispute as to the identity of the HARV that would

14  frustrate the hit-and-run victim's claim against the suspected HARV's insurer should the driver

15  be said to be "known" under such a UM provision. The result may be different when a HARV's

16  insurer admits its insured's involvement in a collision but simply denies fault. Of course, the

17  suspected HARV's insurer here denies fault, but only because it denies involvement in the

18  collision at all. In both cases the insurer denies fault (and hence liability), but in cases like the

19  present one, where the suspected HARV's insurer denies the involvement of the suspected

20  HARV altogether, the identity of the HARV is necessarily in dispute, and the Court's

21  interpretation of "known" under the UM policy must inure to the benefit of the insured to

22  provide the widest possible coverage. *See id.*[1] Defendant has therefore failed to satisfy its initial

23  

24  ―――――――――――――

[1]Although the canons of contract interpretation are sufficient to reach this conclusion, it is worth noting that public policy supports the result, as well. If insureds were barred from UM coverage by merely reporting or later alleging the suspected identity of a HARV, hit-and-run victims would tend to claim ignorance of a HARV's identity even when subjectively certain of it out of fear that they would be left with no coverage at all in cases where they have good reason

1    burden to show a lack of any genuine issue of material fact as to breach of contract, and the

2    Court denies summary judgment on this cause of action.

3         **b.    "Coverage"**

4         Another question is whether the denial of Plaintiff's claim by the suspected HARV's

5    insurer based on a denial of involvement in the collision constitutes a denial of "coverage" under

6    the Policy, or whether this is merely a denial of "liability" that does not amount to denial of

7    "coverage." Plaintiff calls this distinction "nonsensical" and argues that denial of an insured's

8    involvement in an accident equates to denial of coverage. Plaintiff essentially equates

9    "coverage" with "payment," regardless of the reason for denial of payment. In summary,

10   according to Plaintiff, a refusal to pay a claim equals a "denial of coverage," period. Defendant

11   argues that an insurer denies liability, but not coverage, when it admits its insured has a valid

12   policy that would require payment under certain circumstances (coverage) but denies payment

13   under the present circumstances (liability) for a reason such as lack of fault in a collision or lack

14   of involvement in a collision altogether, as here. In summary, according to Defendant,

15   "coverage" just means the existence of a valid policy, whereas "liability" means that a legal

16   obligation to pay a claim has arisen under such a policy.

17        Defendant is correct. There is indeed a legal distinction between denial of coverage and

18   denial of liability. The Nevada Supreme Court does not seem to have interpreted the meaning of

19   "denial of coverage," however the law in California supports the distinction Defendant draws

20   between denial of coverage and denial of liability:

21            "Coverage" and "claim" are by no means synonymous; indeed, it is practically a
             matter of common knowledge that an insurer against whom a claim is made will
22           frequently deny such claim on issues relating to liability even though coverage

23   _____

24   to *suspect* the identity of the HARV (making UM coverage unavailable) but have no evidence to
     *prove* it (making coverage by the suspected HARV's insurer unavailable, as well), and this set of
25   facts will often be the case in hit-and-run collisions. Such a rule would stand against the public
     policy of encouraging the identification of hit-and-run drivers for both criminal and civil
     liability.

actually is afforded in the event that the question of liability is eventually determined against it.

*Page v. Ins. Co. of N. Am.*, 64 Cal. Rptr. 89, 94 (Ct. App. 1967). The weight of authority from other states also supports Defendant's interpretation of the phrase. *See* 24 Eric Mills Holmes, *Appleman on Insurance* § 147.4, at 49 (2d ed. 2004) ("Generally, a denial of the victim's claim will not amount to denial of coverage." (footnotes omitted)).

Here, there appears to be no dispute that the suspected HARV was sufficiently insured. The insurer simply rejected Plaintiff's claim because it denied liability, i.e., it denied any involvement in the collision at all, putting the very identity of the HARV in doubt. The Court therefore finds that there is no question of fact that the suspected HARV's insurer did not "deny coverage" under the third prong of the UM provision.

The Court denies summary judgment on the breach of contract claim, however, because there remains a genuine issue of material fact as to whether the HARV is "unknown." Only if the suspected HARV's insurer accepted that its insured was the HARV, admitted coverage under a sufficient policy, and then still denied liability based on a lack of fault in the collision, would Defendant be entitled to summary judgment on the breach of contract claim.

2.     **Accrual of the Breach of Contract Claim**

Defendant argues that the breach of contract claim has not accrued, because it has not formally denied the UM claim. *See State Farm Mut. Auto Ins. Co. v. Fitts*, 99 P.3d 1160, 1162 (Nev. 2004) ("[A] cause of action for breach of contract against the insurer does not accrue until the insurer formally denies UIM coverage benefits."). In *Fitts*, a court of this District certified to the Nevada Supreme Court the question of whether an insurance company could limit by contract the time period to file an underinsured motorist ("UIM") claim. *Id.* at 1161. The Court ruled that public policy prevented an insurance policy from altering the six-year window to sue on a contract, which runs from the time the contract is allegedly breached. *Id.* at 1162–63. *Fitts*, however, does not aid the Court in determining at what point a claim has been "formally"

Page 9 of 11

1    denied.

2         Defendant alleges that the claim has not been formally denied. Defendant bears the

3    initial burden of production at summary judgment and has neither alleged nor shown how

4    "formal denial" is defined under the Policy by adducing the relevant pages of it. Defendant

5    essentially argues that because it has offered some amount in settlement of the claim, it has not

6    formally denied benefits. This argument is not convincing. Clearly, there is a disputed claim.

7    Defendant has denied the claim to the extent Plaintiff is unsatisfied with the offer. Here,

8    Plaintiff has rejected the offer of $6700, and Defendant does not allege or provide evidence that

9    it has increased the offer to the amount Plaintiff demands. Defendant made the $6700 offer in

10   November 2008 and mailed a check in that amount in April 2009 despite acknowledging having

11   received copies of bills for just under $15,000 and despite the fact that Plaintiff claimed bills of

12   over $37,000. (*See* Letter, Nov. 6, 2008, ECF No. 29-4; Letter Apr. 7, 2009, ECF No. 29-5). In

13   the April 7, 2009 letter, Defendant disputed the legitimacy of some of the medical claims,

14   alleged that some bills were triple-counted, and requested further documentation of the injuries.

15   Defendant wrote that $6700 was the "undisputed value" of the claim and offered to arbitrate the

16   disputed amounts. This appears sufficient for a "formal" denial of the claim. The letter

17   essentially stated that $6700 was the value of the claim, regardless of the demand for $37,000 or

18   more, and that arbitration but not mediation was appropriate. (*See* Letter, Apr. 7, 2009, ECF No.

19   29-5 ("[I]t is our position that mediation would be insufficient to resolve this matter . . . .

20   However, we advised Mr. Brim that we would be open to, and in fact would prefer, to arbitrate

21   this loss.")). In layman's terms, this means "we aren't going to pay you the amount you claim

22   unless an independent, third-party adjudicator forces us to." Communicating such a position to

23   an insured amounts to a denial of a claim.

24   **B.    Breach of the Covenant of Good Faith and Fair Dealing and Unfair Claims
             Practices**

25
         Insurers have a special relationship with their insureds that arises under the implied

1   covenant of good faith and fair dealing. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev.

2   2009). This duty does not arise out of contract, but is imposed on insurers by law. *U.S. Fid. &*

3   *Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (1975). "A violation of the covenant gives rise to a

4   bad-faith tort claim." *Miller*, 212 P.3d at 324. Bad faith is "an actual or implied awareness of the

5   absence of a reasonable basis for denying benefits of the [insurance] policy." *Id.* (quoting *Am.*

6   *Excess Ins. Co. v. MGM*, 729 P.2d 1352, 1354–55 (1986)).

7         Defendant has asked for summary judgment on all claims but has argued only as to the

8   breach of contract claim. If it were entitled to summary judgment on the breach of contract

9   claim, it would also be entitled to summary judgment on the other claims. It is not entitled to

10   summary judgment on the breach of contract claim, however. It may ultimately be entitled to

11   summary judgment on the other claims, but because it has not argued or produced evidence as

12   against the remaining claims, it has not met its initial burden under the summary judgment

13   standard as to them, and the Court denies summary judgment on the remaining claims, as well.

14                                    **CONCLUSION**

15         IT IS HEREBY ORDERED that the Motion for Summary Judgment or Leave to Amend

16   Answer to Add Third Party (ECF No. 24) is GRANTED in part and DENIED in part. Summary

17   judgment is denied, but leave to amend the Answer to implead Jacob Transportation Services,

18   LLC as a third-party defendant is GRANTED.

19         IT IS SO ORDERED.

20         Dated this 4th day of February, 2011.

21

22

23         _____
                      ROBERT C. JONES
24                 United States District Judge

25